CHONG L. LEE,

        Plaintiff,

       v.                                    Case No. 24-C-921

THOMAS NELSON,

        Defendant.

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Chong Lee, an inmate at Waupun Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. He is proceeding against Defendant Thomas Nelson on allegations that Nelson issued Lee a false conduct report in retaliation for Lee complaining about another officer. Nelson filed a motion for summary judgment on June 17, 2025. For the reasons explained below, the Court will grant Nelson's motion and dismiss this case.

### BACKGROUND

At the relevant time, Lee was incarcerated at Waupun Correctional Institution, where Nelson worked as a correctional sergeant. On January 28, 2022, Nelson was working in the northwest cell hall, which is a general population unit where inmates are allowed to move around without escort. Although inmates have some freedom of movement, they are required to walk to their destinations without stopping at other inmate's cells and without loitering with other inmates. Groups of inmates congregating together can be a security risk and has the potential to lead to disruption or violence. Dkt. Nos. 38, 43 at ¶¶1-5.

At the time of the incident, Nelson was stationed in the sergeant's cage, where he monitored the unit through surveillance cameras, phones, and call button notifications. Lee was walking from the bathhouse to his cell. Nelson asserts that Lee stopped at some cells on his way to his own cell, but Lee asserts that he walked straight toward his cell without stopping. According to Nelson, he directed Lee over the loudspeaker to continue moving, but Lee denies this happened. Dkt. Nos. 38, 43 at ¶¶6-10.

The parties agree that, before Lee arrived at his cell, Officer Stacey Meier approached Lee. Nelson asserts that Meier instructed Lee to keep moving, but Lee asserts that Meier called him a racist, derogatory name. There was some further interaction between Meier and Lee, which Nelson interrupted by ordering Lee to lock into a holding cell. At his deposition, Lee testified under oath that, after Meier spoke to him, he turned to Nelson and asked him if he was going to address Meier. He further testified:

> He said to me—for me to leave it alone, and then I wouldn't leave it alone. I don't remember what I said to him. I remember we got into a heated argument because I wouldn't leave it alone. He was like, just walk away, go to your cell, and I was like no. I said, you know, you're—you're her supervising officer. I said you need to address this. I said and she just, you know took something out of me. I didn't do anything. And I was like, you know, why should I get in trouble for something I didn't do? He was like walk away, Lee, just walk away. I have enough trouble to deal with. I was like no, I'm not walking away. I said, you need to deal with this. And then I was like well, I'm just going to write a conduct report—I'm going to write an ICE, a complaint, on you guys then. And he was like go to I-51 . . . and I was like why am I going to I-51? Why should I get—why should I get in trouble for this? He's like go to I-51 right now, you're going to seg. And I was like for what, for writing—making complaints, filing complaints? And he was like I don't care, just go to I-51 and shut the door.

Dkt. Nos. 38, 43 at ¶¶11-16, 34.

Lee then proceeded to the holding cell, where he stayed for about fifteen minutes before being taken to temporary lock-up. Nelson explains that he wrote Lee a conduct report because he believed Lee's behavior could have seriously disrupted the climate in the unit. He explains that,

2

because his interaction with Lee occurred during inmate movement, there was a serious risk to staff and other inmates' safety, particularly because Lee was acting authoritative over staff. The hearing on the conduct report was held on February 16, 2022. Lee was found guilty of disobeying orders and disrespect and found not guilty of threats. Dkt. Nos. 38, 43 at ¶¶24-30, 36.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Lee asserts that Nelson retaliated against him by issuing him a conduct report after Lee complained about how another officer was treating him. To prevail on a retaliation claim, a plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he

3

suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Lee's retaliation claim fails because, based on his sworn description of his interaction with Nelson, his speech was not protected activity under the First Amendment.

Lee testified under oath that Nelson told him "to leave it alone" but he "wouldn't leave it alone." He stated that they "got into a heated argument because he wouldn't leave it alone." Lee confirmed that Nelson directed him to go to his cell, but Lee said no. Lee also acknowledged that he challenged Nelson to do his job as Meier's supervisor and address her conduct. According to Lee, Nelson *again* directed Lee to "walk away" but Lee refused, saying "I'm not walking away." It was only after Lee's repeated refusals to comply with Nelson's directives and Lee's increasingly aggressive rhetoric with Lee threatening to file an inmate complaint that Nelson finally directed Lee to go to the holding cell because he was going to segregation.

More than a decade ago, the Seventh Circuit explained in very similar circumstances that "prison officials have broad discretion to regulate prisoners' speech when consistent with 'legitimate penological interests.'" *Watkins v. Kasper*, 599 F.3d 791, 796 (7th Cir. 2010). Accordingly, for a prisoner's speech to be protected under the First Amendment, a prisoner must engage in "speech in a manner consistent with legitimate penological interests." *Id.* Here, no jury could reasonably conclude that Lee did so.

Lee's criticism of Nelson's supervision of Meier and his repeated refusals to comply with Nelson's orders to "leave it alone," return to his cell, and "walk away," had a negative impact on Nelson's legitimate interests in discipline and maintaining order and security in the unit. By openly

4

challenging Nelson in front of other inmates, Lee impeded Nelson's authority and his ability to maintain control. Lee's "heated argument" with Nelson was particularly problematic because it occurred during a time of inmate movement with inmates moving freely about the unit. Nelson recognized the threat to security if inmates became riled up as a result of Lee's persistent refusal to comply with orders and his direct challenges to Nelson's authority.

Also, although Lee has the right to complain about an officer's mistreatment, he must do so "in a manner consistent with his status as a prisoner." *Watkins*, 599 F.3d at 797. The record shows that Lee did not complain in an appropriate manner. Lee testified under oath that he got into a "heated argument" with Nelson and repeatedly refused to comply with Nelson's orders. Lee could have taken a less disruptive approach by complying with Nelson's directives and then filing an inmate complaint—an option Lee floated as a threat only after he repeatedly refused to comply with Nelson's orders. But Lee's choice to take a more confrontational approach and argue with Nelson in front of other inmates means that his speech is unprotected as a matter of law. *See id*. (citing *Turner v. Safely*, 482 U.S. 78 (1987)).

Lee makes much of the fact that, despite his requests that the video of his interaction with Nelson be preserved, the video was destroyed. But the Court does not need to see the video to resolve Nelson's motion because the Court's analysis is based entirely on Lee's sworn testimony describing his interaction with Nelson. Presumably, the video would simply confirm Lee's version of what happened.

In conclusion, based on Lee's own account of his interactions with Nelson, the Court concludes that his speech was not protected under the First Amendment. Accordingly, Lee does not satisfy the first element of the standard to prove a retaliation claim, so Nelson is entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Nelson's motion for summary judgment (Dkt. No. 36) is **GRANTED**, Lee's motion to schedule oral argument (Dkt. No. 42) is **DENIED as moot**, and this action is **DISMISSED**.  The clerk of court is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 3rd day of September, 2025.

William C. Griesbach
United States District Judge

This order and the judgment to follow are final.  Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment.  See Fed. R. App. P. 3, 4.  This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).  If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome.  If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court.  See Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious.  See 28 U.S.C. §1915(g).  If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury.  *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b).  Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment.  Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment.  The Court cannot extend these deadlines.  See Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.